IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ONYX THERAPEUTICS, INC., | ) |
| | ) |
| Plaintiff, | ) C.A. No. 16-988 (LPS) |
| | ) CONSOLIDATED |
| v. | ) |
| | ) PUBLIC VERSION |
| CIPLA LIMITED, et al., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS CIPLA LIMITED AND CIPLA USA, INC.'S OBJECTIONS
TO PLAINTIFF ONYX THERAPEUTICS, INC.'S BILL OF COSTS**

Defendants CIPLA Limited and CIPLA USA, Inc. (together, "CIPLA" or "Defendants"),

pursuant to 28 U.S.C. §§ 1920-1924, Federal Rule of Civil Procedure 54(d), and District of

Delaware Local Rule 54.1, hereby submit their objections to Plaintiff Onyx Therapeutics, Inc.'s

("Onyx" or "Plaintiff") Bill of Costs (D.I. 557).

**I.     There Should Be An Overall Reduction of Onyx's Bill of Costs**

**a. Onyx Improperly Charges Cipla For The Costs Of Other Defendants**

Onyx's entire bill of costs should be equitably reduced because Onyx incurred costs to

prosecute substantially similar claims against eleven (11) separately represented defendant groups,

including Cipla, in many related cases that were consolidated for purposes of discovery and trial.

*See* C.A. Nos. 16-1000, 16-1001, 16-1011, 16-1012, 16-1013, 16-1036, 16-1039, 17-1202, 16-

999, 17-449, 19-71, 17-155, 17-1235, 17-1699, 17-1811, 17-1833, 18-132, 18-262, 18-598.  Two

(2) defendant groups settled and were dismissed by stipulation during discovery, after more than

a year of litigation.  *See* D.I. 114 (Qilu Defendants); D.I. 132 (Teva Pharmaceuticals USA, Inc.).

Nine (9) defendant groups, including Cipla, participated in all pre-trial proceedings, of which five

(5) defendant groups settled on the eve of trial and were officially dismissed by Consent Judgments

entered on the May 8, 2019, the third day of trial.  *See* D.I. 504 (Sagent Pharmaceuticals, Inc.);

1

D.I. 505 (Apotex defendants); D.I. 506 (InnoPharma defendants); D.I. 507 (Aurobindo defendants); D.I. 508 (Fresenius Kabi defendants). Cipla and three (3) other defendant groups began the trial, then one defendant group reached a settlement on the second day of trial, May 7, 2021 (*see* D.I. 503), and was officially dismissed by Consent Judgment the next day. D.I. 509 (MSN defendants). The remaining two (2) defendant groups settled on the fourth and fifth days of trial, respectively (*see* D.I. 510; D.I. 511), and were officially dismissed by Consent Judgments entered on May 16, 2019, the last day of trial. *See* D.I. 513 (Dr. Reddy's Laboratories defendants); D.I. 514 (Breckenridge Pharmaceutical Inc.). A table showing these dates is provided below:

| Description | Dismissal Date | Docket No. |
| --- | --- | --- |
| Complaint filed against Cipla | 10/24/2016 | 1 |
| Qilu Dismissal | 2/7/2018 | Text Order Referencing D.I 114 |
| Teva Dismissal | 2/14/2018 | Text Order Referencing D.I. 132 |
| Apotex Dismissal | 5/8/2019 | 505 |
| Aurobindo Dismissal | 5/8/2019 | 507 |
| Fresenius Dismissal | 5/8/2019 | 508 |
| Innopharma Dismissal | 5/8/2019 | 506 |
| MSN Dismissal | 5/8/2019 | 509 |
| Sagent Dismissal | 5/8/2019 | 504 |
| Breckenridge Dismissal | 5/16/2019 | 514 |
| Dr. Reddy Dismissal | 5/16/2019 | 513 |

Onyx makes no effort to parse out which costs relate to Cipla versus the other defendants. It would be "inequitable to impose the costs of this entire litigation" on Cipla when Onyx permitted the other defendants "to exit the litigation just before costs were determined." *Sanofi v. Glenmark Pharms., Inc. USA*, 2018 LEXIS 206845, at *3-4, *6 (D. Del. Dec. 7, 2018).

More importantly, as part of the settlements with these other defendants, Onyx agreed that it would be responsible for its own costs, and having forgone them, should not be entitled to seek these costs from Cipla as doing so amounts to an impermissible double recovery. (D.I. 115 (including language that "[e]ach party shall be responsible for its own fees, costs, and expenses in

connection with the claims dismissed by this stipulation"), 133 (same), 504-509 (including language that "[a]ll claims, counterclaims, affirmative defenses and demands in this action by either Onyx or [defendant] are hereby dismissed with prejudice and without costs, disbursements or attorneys' fees to any party"), 513 (same), 514 (same)); *see, e.g.*, *Ortho-McNeil Pharms., Inc., v. Mylan Labs Inc.*, 569 F.3d 1353, 1358 (Fed. Cir. 2009) (explaining "there is a risk of impermissible double recovery" where prevailing party already in effect recovered some costs through settlement with another defendant); *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 687 F.2d 626, 629 (2d Cir. 1982) (finding "the district court erred in not reducing the award of costs to reflect the agreement that the claims of certain plaintiffs were settled 'without costs'"); *New Jersey Mfrs. Ins. Grp. v. Electrolux, Inc.*, No. 10-cv-1597, 2013 WL 5817161, at *6 (D.N.J. Oct. 21, 2013) (commending prevailing party for "splitting the costs of these depositions over the three cases, in recognition of the fact that it cannot recoup duplicate cost awards").

Therefore, most of Onyx's costs associated with pre-trial proceedings should be reduced by the number of defendants participating in those proceedings (i.e., the number should be reduced by **89%** to represent Cipla's position as one-ninth of the defendants surviving all pre-trial proceedings). Similarly, all of Onyx's costs associated with trial proceedings should be reduced by the number of defendants participating in those proceedings (i.e., the number should be reduced by **75%** representing Cipla's position as one-fourth of the defendants participating in those proceedings).

### b. Onyx Improperly Includes Costs Associated With Claims Onyx Did Not Prevail On

Onyx initially asserted 132 patent claims against Cipla: claims 1–6, 15–24, and 37 of Patent No. 7,417,042 ("the '042 patent"); claims 1-4, 23-25, 38, and 49-50 of Patent No. 7,232,818 ("the '818 patent); claims 1-3, 22-24, 31, 37, 48 of Patent No. 7,491,704 ("the '704 patent); claims

1-9, 14, 18-24 and 29-32 of Patent No. 7,737,112 ("the '112 patent"); claims 1-3, 22-24, 37, 48-49, and 52-60 of Patent No. 8,129,346 ("the '346 patent"); claims 1, 4, 5, 7–10, 12, 13, 16, 18–25, and 27–30 of Patent No. 8,207,125 ("the '125 patent"); claims 1–5, 7–14, and 16–21 of Patent No. 8,207,126 ("the '126 patent"); claims 1, 12–17, 19, 20, and 23–27 of Patent No. 8,207,127 ("the '127 patent"); and claims 1-8, 10-17, 19-24 of Patent No. 8,207,297 ("the '297 patent").  (D.I. 1).  But Onyx dismissed the vast majority of these claims prior to trial, with the final judgment in this case only addressing 5 of the original 132 claims:  claims 23 and 24 of the '042 patent, claim 1 of the '125 patent, and claims 31 and 32 of the '112 patent.  (D.I. 549).  Importantly, Onyx never received a final judgment with respect to 127 of its original claims, including all the claims from the '818, '704, '346, '126, '127 and '297 patents.  Indeed, final judgment was granted in Cipla's favor on one of the 5 claims that were actually tried (claim 32 of the '112 patent).  Yet Onyx makes no attempt to parse out the costs for any of the 128 claims and six patents it did not prevail on.  This is improper, and the Court should reduce Onyx's costs comparably (e.g., by an additional **75%**) to reflect the costs associated with claims that Onyx did not prevail on.  *See Shum v. Intel Corp.*, 629 F.3d 1360, 1370 (Fed. Cir. 2010) ("It was not unreasonable for the district court to consider which claims the parties respectively won, or to reduce the prevailing party's costs award to reflect the extent of its victory (i.e., the claims it lost).  Here, the district court accounted for the claims defendants lost in precisely that fashion: it reduced defendants' costs associated with the claims they won by the costs incurred by Shum on the claims he won."); *United Access Techs., LLC v. EarthLink, Inc.*, No. 02-cv-272-MPT, 2012 WL 2175786, at *6–11 (D. Del. June 14, 2012) (declining to award deposition costs and explaining "no justification exists under the circumstances of this matter to allow EarthLink to recover deposition expenses related to the issue of validity" [i.e. the issue the prevailing party did not win]).

## II.     Exemplification, Printing and Copying Costs Should Be Significantly Reduced

28 U.S.C. § 1920(4) permits taxation of costs for "exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case." 28 U.S.C. § 1920(4).  Furthermore, D. Del. LR 54.1(b)(5) provides (in relevant part):

> The cost of copies of an exhibit necessarily attached to a document required to be filed and served is taxable. The cost of one copy of a document is taxable when admitted into evidence. The cost of copies obtained for counsel's own use is not taxable.

The total amount requested by Onyx in this category is comprised of three parts:

a. **$242,051.44** for "copying, scanning, imaging and file format conversion, bates stamping, and document production to Cipla of electronically stored information and hard-copy documents."

b. **$45,236.16** for "exemplification, printing and copying documents reasonably necessary for use at trial…"; and

c. **$11,346.75** for "certified file wrappers of the patents in suit . . ."

For the reasons that follow, Onyx's costs in this category should be denied or substantially reduced.

### a.     The $242,051.44 in fees for "copying, scanning, imaging and file format conversion, bates stamping, and document production to Cipla of electronically stored information and hard-copy documents" should be significantly reduced

Onyx's bill of costs does not differentiate between costs for copying, scanning, imaging, converting, bates stamping, and producing documents (or any other costs) that were requested or necessitated by Cipla and those costs for documents that were requested by any of the nine (9) groups of defendants, and Onyx's bill of costs should accordingly be reduced proportionately to **11%** (one ninth) of the requested amount.  *See Sanofi*, 2018 U.S. Dist. LEXIS 206845, at *3-*4, *6 (reducing costs by half because "it would be inequitable to impose the costs of this entire

litigation on Defendant Sandoz when Plaintiff permitted Watson to exit the litigation just before costs were determined").  Moreover, there was at least one set of requests for production served solely by Aurobindo defendants (D.I. 211), and Cipla should not be responsible for costs associated with Aurobindo's requests.

These costs should be reduced even further because Onyx's bill of costs includes costs that are not taxable.  Onyx's invoices from its document vendor, Epiq, include services for the months of February 2017 ($2,084.38), March 2017 ($4,737.87), April 2017 ($13,586.87), and May 2017 ($4,066.83) for a total of **$24,475.95**.  D.I. 558-1 at Exhibit E.  However, Cipla and other defendants served their First Set of Joint Requests to Plaintiff for the Production of Documents and Things (Nos. 1–55) on May 26, 2017.  (D.I. 39)  Onyx fails to articulate how the costs invoiced for the months of February, March, and April 2017 are attributable to documents requested by Cipla when these costs were incurred before Cipla or any other defendant served a document request.  Thus, these costs (totaling **$24,475.95**) are non-taxable and not recoverable.  *See Sanofi*, 2018 U.S. Dist. LEXIS 206845, at *6–7 (the Court does "not believe that logic extends to documents Sandoz did not request and did not receive").

The remaining vendor costs contained in the post-May 2017 invoices should also be reduced.  The Third Circuit approves taxation of only certain limited costs incurred for document vendors.  Onyx seeks a portion of the line items on each invoice from Epiq.  The remaining line items are redacted.  The specific line items that Onyx seeks to recover as taxed costs include:

- "Process & Promote to Review Database"

- "OCR for Processing Exceptions"

- "OCR for Loaded Data"

- "Load Files-Native, Scanned & 3rd Party"

- ▪ "Create TIFF Images"

- ▪ "PDF from TIFF"

- ▪ "PDF w/Text from TIFF"

- ▪ "Stamping/Endorsement"

- ▪ "Prepare Data, Text, Images"

- ▪ "Prepare Native Files"

- ▪ "Equivio Threading & Near-Dup Detection"

(*See* D.I. 558-1 at Exhibit E.)

Several of these line items are non-taxable under the Third Circuit's controlling precedent. In *Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161-62 (3d Cir. 2012), the court considered a request to tax document vendor costs that were categorized in seven (7) categories: "(1) preservation and collection of ESI; (2) processing the collected ESI; (3) keyword searching; (4) culling privileged material; (5) scanning and TIFF conversion; (6) optical character recognition ("OCR") conversion; and (7) conversion of racing videos from VHS format to DVD format."

The Third Circuit observed that "neither the language of § 1920(4), nor its history, suggests that Congress intended to shift all the expenses of a particular form of discovery—production of ESI—to the losing party." *Id*. at 171.  Of the seven categories of charges at issue, the Third Circuit concluded that "**only the scanning of hard copy documents, the conversion of native files to TIFF, and the transfer of VHS tapes to DVD involved 'copying,' and that the costs attributable to only those activities are recoverable under § 1920(4)'s allowance for the 'costs of making copies of any materials**.'"  *Id.* (emphasis added). Processing charges are non-taxable because "Section 1920(4) does not state that all steps that lead up to the production of copies of

materials are taxable.  It does not authorize taxation merely because today's technology requires technical expertise not ordinarily possessed by the typical legal professional. ... Section 1920(4) authorizes awarding only the cost of making copies." *Id.* at 169.  Just as the preparatory measures taken in pre-digital discovery to locate, collect, and review documents before producing copies are not taxable, the preliminary steps required to meet electronic discovery obligations are similarly unrecoverable under § 1920(4).  *Id.* at 169-70 ("[G]athering, preserving, **processing**, searching, culling, **and extracting ESI simply do not amount to 'making copies.'**") (emphasis added). Similarly, "deduplication" is also "not taxable."  *Id*. at 171 n.11.

Accordingly, *Race Tires Am., Inc.* provides that at least the following line items on Epiq's invoices sought by Onyx, which comprise a significant portion of the total costs amount sought by Onyx in this category, are non-taxable:

- "Process & Promote to Review Database"

- "Load Files-Native, Scanned & 3rd Party"

- "Prepare Data, Text, Images"

- "Prepare Native Files"

- "Equivio Threading & Near-Dup Detection"

Onyx improperly seeks **$171,970.59** for these impermissible items contained in the post-May 2017 invoices.

Furthermore, for line items other than "Stamping/Endorsement," it is unclear whether Onyx's bill of costs and Epiq's invoices differentiate between: (i) those documents that Onyx produced to Cipla; and (ii) those documents that Onyx loaded into its review database, but did not produce (e.g., non-responsive or privileged documents) to Cipla.  Onyx's redactions to Epiq's invoices do not allow Cipla (or the Clerk) to assess the total number of pages for which Epiq

charged Onyx to OCR, create Tiff images, and stamp/endorse, or how that total compares to the

total number of pages actually produced to Cipla.  Onyx also redacted Epiq's unit/per-page cost

for TIFF conversion, OCR, stamping/endorsement, or all other services.  In *Sanofi v. Glenmark

Pharms., Inc. USA*, 2018 U.S. Dist. LEXIS 206845, at *6-7 (D. Del. Dec. 7, 2018), Judge Andrews

addressed this issue, stating:

> Plaintiffs' request encompasses produced and non-produced
> documents. (*See* D.I. 359 at 7). Sandoz argues it should only be
> responsible for the documents that Plaintiffs produced to it. I agree.
> Sandoz should only be responsible for the cost of documents that
> were responsive to discovery requests. It asked for those documents.
> Thus, it is fair and equitable that they should have to pay for them.
> I do not believe that logic extends to documents Sandoz did not
> request and did not receive. I will grant Plaintiffs the cost of TIFF
> conversion for the produced documents.
>
> Plaintiffs produced 1,220,766 pages. (D.I. 359 at 7). It appears that
> the going rate for TIFF conversion is $0.02 per page. (*See* D.I. 346-
> 1, Exhs. E1-E3). The total cost for TIFF conversion of the produced
> documents was, therefore, $24,415.32. I will award Plaintiffs half
> that amount, $12,207.66.

Judge Andrews also denied the requested costs for OCR and Bates stamping due to the

plaintiffs' insufficient detail, stating that "OCR and Bates stamping also may be recoverable under

[28 U.S.C.] Section 1920.  However, the documentation submitted by Plaintiffs is not sufficient

for me to determine which portion of those costs are attributable to documents actually produced.

[citations omitted]. Thus, I will consider only the cost of TIFF conversion."  *Sanofi*, 2018 U.S.

Dist. LEXIS 206845 at n. 3.  *See also Honeywell Int'l Inc. v. Nokia Corp.*, 2014 U.S. Dist. LEXIS

79611, at *38-39 (D. Del. May 30, 2014), in which Judge Stark observed that:

> Fuji is requesting only half of its printing, exemplification, and copy
> costs, as a concession to the fact that it has not tracked and disclosed
> the identity of each photocopied page or described its relevance to
> the case. (See D.I. 1147 at 7) As Defendants observe, **the Federal
> Circuit in *Summit Tech* approved a 50 percent reduction in copy
> costs as being a reasonable method of taxing such costs**. (D.I.

> 1135 at 16) (citing 435 F.3d at 1378) ('**[I]n complex patent litigation involving hundreds of thousands of documents and copies, parties cannot be expected to track the identity of each photocopied page along with a record of its relevance to the litigation. Thus, although a simple 50 percent reduction is a somewhat crude method of accounting for non-necessary copies, we believe the district court acted within its discretion'** in applying such a reduction). The Court agrees with Fuji that an appropriate and efficient way of dealing with the circumstances presented here is to apply an across-the-board reduction to the copying and exemplification costs Defendants incurred.

Onyx similarly has not tracked or disclosed the identity of each photocopied page or described its relevance to the case.  Further, Onyx's redactions prevent Cipla or the Clerk from determining whether Onyx's total costs include non-taxable costs to documents that it did not produce.  Therefore, in addition to all the reductions discussed above, this category of costs should be reduced by an additional **50%**.

In sum, the **$242,051.44** that Onyx seeks should be reduced by **$24,475.95** (for invoices incurred prior to any document requests) and another **$171,970.59** (for activities associated with line items not associated with "making copies") for a total reduction of **$196,446.54** to yield **$45,604.90**.  This number should be further reduced by **50%** (to account for Onyx's failure to categorize non-produced and produced documents) to **$22,802.45** and another **89%** to account for Cipla's role as one out of 9 defendants.  This leaves a total of **$2,533.61**.

**b.     $45,236.16 in fees for "exemplification, printing and copying documents reasonably necessary for use at trial...." should be denied or significantly reduced**

First, Onyx makes no attempt to differentiate between those exemplifications that were admitted into evidence (which could be taxable under L.R. 54.1) and those that were not admitted into evidence (which are not taxable under L.R. 54.1).  For this reason, Onyx's exemplification costs should be denied in their entirety.

Even if these costs are entertained, they should be significantly reduced because Onyx has made no effort to track and explain the relevance of any particular page.  In *Honeywell*, Judge Stark ordered a 75% reduction of the printing, exemplification, and copy costs so that the prevailing party did not "improperly recover for ineligible expenditures, . . . including . . . 'costs of copies made solely for the convenience of counsel. . . .'"  *Honeywell*, 2014 U.S. Dist. LEXIS 79611, at *39.   Here, numerous Parcels invoices submitted by Onyx reflect charges for as many as **10x** or **15x** copies, likely because Onyx made copies for its own purposes or for other defendants (other than Cipla).  D.I. 558-1 at Exhibit F.  These charges are excessive.  *See, e.g.*, D. Del. LR 54(b)(5) ("The cost of **one copy** of a document is taxable **when admitted into evidence**.").  Furthermore, at least one of the Parcels invoices (No. 818268) contains contradictory information suggesting that it may have been issued for copies requested by the Carfilzomib Joint Defense Group.

In sum, Onyx's costs should be denied in their entirety as Onyx does not differentiate between exhibits admitted into evidence and those that were not.  If costs are awarded, Onyx's **$45,236.16** in costs should be reduced by **50%** to account for copies Onyx used for its own purposes, for a total of **$22,618.08**.  This number, in turn, should be reduced by an additional **75%** to account for copies for the three other defendants attending trial, for a total of **$5,654.52.**

    **c.**    **$11,346.75 for "certified file wrappers of the patents in suit . . . ." should be significantly reduced**

Per D. Del. LR 54.1(b)(5), "The cost of patent file wrappers and prior art patents are taxable at the rate charged by the Patent Office."  Onyx's costs are not justified, at least in part, because Onyx's invoice from Tempus IP LLC appears to charge rates ($1 per page) substantially in excess of those charged by the Patent Office.  Tellingly, Onyx's Bill of Costs and the Tempus IP LLC invoice do not mention the "rate charged by the Patent Office" and Onyx has not met its burden to

justify these costs.  A party may order certified file wrappers directly from the Patent Office's website, for a flat fee of $315 per file wrapper.  *See* Declaration of Gurpreet Singh Walia, Esq. ("Walia Dec."), submitted herewith, ¶ 3; Exhibit A.  Accordingly, Onyx's costs in this category should be reduced from **$11,346.75** to **$945,** which is the total cost to obtain certified file wrappers for the three (3) patents mentioned in the Final Judgment (D.I. 549).  Cipla's one-ninth share of this cost is **$105**.

## III.   Demonstrative Costs and Trial Equipment Costs Should Be Denied or Significantly Reduced

Local Rule 54.1(b)(11) provides that "[c]laims for costs other than those specifically mentioned" in the Rule "ordinarily will not be allowed, unless the party claiming such costs substantiates the claim by reference to a statute or binding court decision."  Neither 28 U.S.C. 1920 nor D. Del. L.R. 54.1 provide for taxation of costs relating to demonstrative exhibits and trial presentation/equipment (referred to in the Bill of Costs as "trial graphics consulting") (Bill of Costs at n.3), and Onyx fails to cite to any binding court decision allowing such costs. Onyx relies on *Intellectual Ventures I LLC v. Symantec Corp.*, C.A. No. 10-1067-LPS, 2019 WL 1332356, at *3 (D. Del. Mar. 25, 2019) as "granting costs, of which $66,000 was for trial graphics consulting." (Bill of Costs at 16)  Not so.  In *Intellectual Ventures I LLC* the court did not discuss costs for trial graphics consulting, but rather the costs for a technology tutorial ***required*** by the Court as part of the claim construction hearing.  *See* 2019 WL 1332356 at *4.  Accordingly, Onyx's request should be denied in full because Onyx failed to reference any statute or binding court decision substantiating its claim for costs of demonstratives at trial, which indisputably were not requested or required by the Court, or for the costs of trial equipment.

Even if Onyx could recover some of its demonstrative costs and trial equipment costs despite the lack of any supporting statutory authority or binding court decision, Onyx's costs

should be substantially reduced for several reasons. First, courts regularly deny taxation of costs relating to trial equipment rental. *See, e.g.*, *Honeywell*, 2014 U.S. Dist. LEXIS 79611, at *40 (denying costs and explaining "the Court has equipment that it makes available to litigants to allow the display of demonstratives and evidence, and no reason emerges from the record to suggest that the Court's equipment would have been unavailable or inadequate for the Markman hearing."); *Supernus Pharms., Inc. v. TWi Pharms., Inc.*, No. 15-cv-369, 2018 WL 2175765, at *17 (D.N.J. May 11, 2018) (denying costs for trial equipment rental). Therefore, the Court should deny Onyx's **$694.76** in costs for trial equipment.

Onyx's costs for "trial graphics consulting" are also excessive. Importantly, the costs for trial graphics consulting requested by Onyx do not relate to any presentation required by the trial judge (making them quite unlike the technology tutorials in the cases cited by Onyx). During trial, Impact Trial Consulting LLC ***billed for six (6) individuals each consistently providing for 15-18+ hours of services daily***. Impact Trial Consulting LLC's invoices provide almost no detail and do not allow Cipla or the Clerk to assess what specific services led to the ***charges for six (6) individuals to provide up to 80+ hours per day***. For example, the line item charges merely state "Graphics: Development & Production" or "Graphics: Onsite Support" and identify the individual and total hours charged.

Onyx's bill of costs provided no additional detail, but rather claims that "Onyx utilized demonstratives during trial because they would aid the Court's understanding of the complex scientific concepts embodied in the case. . . ." (D.I. 557 at 17-18). Even if some costs for Impact Trial Consulting LLC were properly taxable costs, those costs should not include time for the "intellectual effort" involved in the production of the demonstrative exhibits. *See Intellectual Ventures I LLC v. Symantec Corp.*, 2019 WL 1332356 (D. Del. March 25, 2019); *Honeywell Int'l,*

*Inc. v. Hamilton Sundstrand Corp.*, 2009 U.S. Dist. LEXIS 93395, *13 (D. Del. Sept. 30, 2009) (the only amount taxable is "for the actual presentation of the exhibits and documents," and not for explanation or argument or "the intellectual effort involved in their production."); *see also Cordance Corp. v. Amazon.com, Inc.,* 855 F. Supp. 2d 244, 251 (D. Del. 2012) (awarding only $600 for exemplifications because that was the cost for "presenting" the demonstratives). Similar costs have been denied by other courts in this Circuit. *See also Supernus Pharms.*, 2018 WL 2175765, at *16–17 (denying costs relating to graphics consulting, graphics production, and on-site graphics support); *see also Depomed, Inc. v. Actavis Elizabeth LLC*, No. 13-cv-4507 et al., 2018 WL 999673, at *16–18 (D.N.J. Feb. 21, 2018) (denying all costs relating to visual aids).

The extraordinarily and unreasonably large amount of time billed by Impact Trial Consulting LLC's employees strongly suggests that a large portion of that time billed was for the "intellectual effort" involved in the production of the demonstrative exhibits, and not merely for the physical preparation and supplication of documents. Accordingly, to the extent that any such costs are recoverable as taxed costs, that amount should be only a small fraction of the total costs requested by Onyx.

As stated above, these costs should not be allowed. If any costs for demonstratives are allowed, they should be limited to the costs of "Total Supply" charges in the invoices of **$2,708**. *See* D.I. 558-1 at Exhibit G. Any awarded costs should further be reduced by **75%**, making Cipla's share **$677**.

## IV.    Deposition Transcript Costs Should Be Significantly Reduced

Section 1920 permits taxation of costs relating to deposition transcripts that are "necessarily obtained for use in the case." 28 U.S.C. § 1920(2). However, even Onyx agrees that

D. Del. L. R. 54.1(b)(3) is "narrower" than Section 1920 (Bill of Costs at 6-7), providing as follows concerning taxable "Deposition Costs":

> The reporter's reasonable charge for the original and one copy of a deposition and the reasonable cost of taking a deposition electronically or magnetically recorded are taxable **only where a substantial portion of the deposition is used in the resolution of a material issue in the case**. Charges for counsel's copies and the expenses of counsel in attending depositions are not taxable, regardless of which party took the deposition. Notary fees incurred in connection with taking depositions are taxable.   (emphasis added).

However, *Onyx has not even attempted* to meet the standard of D. Del. L.R. 54.1(b)(3) and therefore the bulk of these charges are non-taxable.  Onyx made no effort to link the use of any the 23 deposition transcripts, much less a "substantial portion" of any transcript, to the resolution of any material issue in this case.  Onyx grouped the deposition transcripts into three categories: (i) witnesses who testified live at trial; (ii) witnesses who testified by designation; and (iii) witnesses who did not testify at trial.  As to (i) witnesses who testified live, Onyx contends the deposition transcripts and video were necessary "to prepare for trial, including to prepare for cross-examination and possible impeachment of the witnesses."     However, "use of the deposition transcripts to prepare for examining witnesses is considered a routine use and ***not*** one specifically directed to resolution of a material issue in the case."  *Fed. Ins. Co. v. Bear Indus., Inc.*, No. 03-215 SLR, 2006 WL 3334951 at *1 (D. Del. Nov, 16, 2006) (emphasis added).  Furthermore, the costs for witnesses who did not testify at trial are definitely non-taxable.  *See Honeywell*, 2009 U.S. Dist. LEXIS 93395 (denying costs for depositions that were not presented at trial and were scarcely mentioned in court's rulings under D. Del. LR 54.1(b)(3), but not examining issue under 28 U.S.C. § 1920).  *Sanofi*, 2018 U.S. Dist. LEXIS 206845 ("Costs for deposition transcripts under Local Rule 54.1(b)(3) are allowed 'where a substantial portion of the deposition is used in the

resolution of a material issue in the case.' Plaintiffs do not attempt to meet this standard. Rather, their argument is largely a request that I ignore the guidance of the Local Rule and adopt an expansive view of Section 1920. I decline. **It is clear from the briefing that the impact of the deposition transcripts on the case was negligible.  Equity does not require that I grant Plaintiffs the costs associated with obtaining numerous deposition transcripts which were predominantly unused in dispositive motions and trial.** I will deny this request.") (emphasis added) (internal citations omitted).

In sum, Onyx is not entitled to any deposition costs because of their failure to show that a substantial portion of these depositions were used to resolve a material issue in this case.  If these costs are allowed more generally, the Court should deny the costs associated with witnesses who did not testify live or by designation (totaling **$8,923.88**), reducing the deposition costs from the **$44,282.03** to **$35,358.15**.  *See* Onyx Bill of Costs at 7, 9 (Table), 12.  The Court should further deny the costs associated with transcripts used to prepare Onyx's own witnesses as a nontaxable, routine use (totaling **$12,379.10**) further reducing deposition costs to **$22,979.05**.  All the deposition costs should be further reduced by 89%, recognizing that 9 defendants participated in discovery, and many of the depositions were noticed by someone other than Cipla (*e.g.*, D.I. 118) and other defendants participated in many of these depositions and asked questions relevant to issues in their own cases.  In other words, to the extent deposition costs are allowed, Cipla's share of the costs is **11%** of **$22,979.05** or **$2,553.23**.

V.    **Witness Fees Should Be Significantly Reduced**

D. Del. LR 54.1(b)(4) provides as follows with respect to taxing costs for "Witness Fees, Mileage and Subsistence":

> The rates for witness fees, mileage and subsistence are fixed by 28
> U.S.C. § 1821. Such fees are taxable even though the witness does

16

not take the stand, provided the witness attends Court. Witness fees and subsistence are taxable only for the reasonable period during which the witness is within the district.

Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the Court to the residence of the witness is such that mileage fees would be greater than subsistence fees, if the witness were to return to his/her residence from day to day.

No party shall receive witness fees for testifying in its own behalf, but this shall not apply where a party is subpoenaed to attend Court by the opposing party. Witness fees for officers of a corporation are taxable if the officers are not defendants and recovery is not sought against the officers individually. Unless otherwise provided by statute, fees of expert witnesses are not taxable in an amount greater than that statutorily allowable for ordinary witnesses. The reasonable fee of an interpreter is taxable if the fee of the witness involved is taxable.

Many of Onyx's requested witness travel expenses are non-taxable. A witness who travels by common carrier at the most economical rate reasonably available shall be paid the actual expenses of travel. *See* 28 U.S.C. § 1821(c)(1). A witness who travels by privately-owed vehicle shall receive a travel allowance equal to the mileage allowance provided for official travel of federal employees (*i.e.*, $0.58 per mile for 2019). *See* 28 U.S.C. § 1821(c)(2). Additionally, the witness should receive reimbursement for toll charges, taxicab fares between places of lodging and carrier terminals, and parking fees. 28 U.S.C. § 1821(c)(3).

Accordingly, Christopher Lipinski's travel costs should be reimbursed at the GSA rate ($0.58 per mile), rather than at the actual cost of $805 ($700 plus $105 tip) for Vital Express Limo and Car Service. *See* D.I. 558-1 at Exhibit D; *see also Supernus Pharms.*, 2018 WL 2175765, at *11 (reducing a limo service ride to the applicable GSA mileage allowance). Even if the court were to award costs for a round trip of roughly 500 miles (250 miles each way from Waterford, CT), this would be only total **$290**.

Susan Molineaux's $5,232.61 travel costs include **two** round trips in **business class**.  D.I. 558-1 at Exhibit D.  These are not justified as they were not at the "most economical rate reasonably available."  28 U.S.C. § 1821(c)(1); *see also Supernus Pharms.*, 2018 WL 2175765, at *11 (reducing first-class airfare to economy class airfare).  Moreover, Onyx fails to explain why Molineaux took **two** round trip flights when she attended 4 consecutive days of trial.  A more reasonable fee is for one roundtrip ticket, which today would cost about **$672** (*see* Walia Dec., Exhibit B).

Similarly, Dr. Rajewski's travel expenses of $3,041.60 include two round-trip flights, *3 of 4 legs of which were first class fare* that Onyx cannot recover under 28 U.S.C. ¶ 1821(c)(1).  D.I. 558-1 at Exhibit D; *see also see also Supernus Pharms.*, 2018 WL 2175765, at *11.  Like Molineaux, Onyx fails to explain why Rajewski took two round trips.  A more reasonable fee is for *one* roundtrip ticket, which today would cost about **$494** (*see* Walia Dec., Exhibit C).

In sum, Onyx's travel costs should be reduced to **$6,171.00**.  Additionally, Cipla should not bear the cost for all four defendants that attended trial.  As such, this number should be reduced further by **75%** to **$1,542.75** to account for the three other defendants at trial.

**VI.**   **Pre-Trial and Trial Transcript Costs Should Be Proportionally Reduced**

The $9,300.43 in trial and pretrial transcript costs should be reduced proportionally to recognize that multiple defendants participated in the early days of the trial, as it would be "inequitable to impose the costs of this entire litigation" on Cipla when Onyx permitted the other defendants "to exit the litigation just before costs were determined."  *Sanofi*, 2018 LEXIS 206845, at *3-4, *6.  For this reason, these costs should be reduced by 75% for a total of **$2,325.11**.

**VII.**   **Conclusion**

For all of the foregoing reasons, Onyx has not met its burden to justify taxing many of the costs it seeks.  Because Cipla was one of many defendants, and Onyx agreed to bear its own costs

associated with those defendants in its dismissals, the amount should be reduced proportionally. If the Clerk awards any of Onyx's claimed bill of costs, that award should not exceed the taxable amount listed below.  Moreover, if the Court is inclined to credit Cipla for receiving judgment in its favor on one of the five asserted claims, the amounts below should be further reduced.

| | Categories | Onyx Claimed Amount | Defendants' Combined Amount | Cipla's Share[1] |
|---|---|---|---|---|
| 1 | Exemplification, Printing and Copying Costs | $298,634.35 | $46,365.53 | $8,293.13 |
| | a.  Production Costs[2] | $242,051.44 | $22,802.45 | *$2,533.61* |
| | b.  Printing and Copying Trial Exhibits | $45,236.16 | $22,618.08 | $5,654.52 |
| | c.  Certified File Wrappers of the patents in suit | $11,346.75 | $945.00 | *$105.00* |
| 2 | Demonstrative Costs and Trial Equipment Costs | $308,193.98 | $2,708.00 | $677.00 |
| 3 | Deposition Transcript Costs | $44,282.03 | $22,979.05 | *$2,553.23* |
| 4 | Witness Fees | $13,793.81 | $6,171.00 | $1,542.75 |
| 5 | Pre-trial and trial transcript costs | $9,300.43 | $9,300.43 | $2,325.11 |
| 6 | Clerk Costs | $775.00 | N/A | $575.00[3] |
| 7 | **Total** | **$674,979.60** | **$87,524.01** | **$15,966.22** |

[1] Cipla's share is 1/9 of the nine-defendant cost total before trial (1/9 numbers *italicized*) and 1/4 of the trial costs where it was one of 4 remaining defendants until trial began (1/4 numbers underlined)

[2] Items in shaded boxes are a breakdown of the total for Category 1.

[3] Before the cases were consolidated on April 18, 2017 (D.I. 21), Onyx's fees associated with the Cipla case were $550.  Afterward Onyx incurred an additional $225 dollars in pro hac fees in the consolidated case.  So Cipla calculates its share to be $550 plus one-ninth of the $225 dollars, for a total of $575.00.

Dated:  May 28, 2021                          Respectfully submitted,

                                              GREENBERG TRAURIG LLP

                                              */s/ Benjamin J. Schladweiler*
                                              Benjamin J. Schladweiler (#4601)
                                              The Nemours Bldg.
                                              1007 North Orange Street
                                              Suite 1200
                                              Wilmington, DE 19801(302) 661-7355
                                              schladweiler@gtlaw.com

                                              Gurpreet Singh Walia, M.D. Esq.
                                              Fisher Broyles LLP
                                              445 Park Avenue, Ninth Floor
                                              New York, NY 10022
                                              (516) 996-1100
                                              Gurpreet.Walia@fisherbroyles.com

                                              *Counsel for Defendants CIPLA Limited and
                                              Cipla USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 28, 2021, upon the following in the manner indicated:

Jack B. Blumenfeld, Esquire                                 *VIA ELECTRONIC MAIL*
Karen Jacobs, Esquire
Megan E. Dellinger, Esquire
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
*Attorneys for Plaintiff Onyx Therapeutics, Inc.*

Lisa B. Pensabene, Esquire                                 *VIA ELECTRONIC MAIL*
Hassen Sayeed, Esquire
Margaret O'Boyle, Esquire
Caitlin P. Hogan, Esquire
Carolyn Wall, Esquire
Eberle Schultz, Esquire
James Yi Li, Esquire
Samantha M. Indelicato, Esquire
Mark A. Hayden, Esquire
O'Melveny & Myers LLP
7 Times Square
New York, NY 10036
*Attorneys for Plaintiff Onyx Therapeutics, Inc.*

Wendy A. Whiteford, Esquire                                 *VIA ELECTRONIC MAIL*
Brian Kao, Esquire
C. Nichole Gifford, Esquire
Joseph Lasher, Esquire
Amgen Inc.
One Amgen Center Drive
Thousand Oaks, CA 91320-1789

John R. Labbe, Esquire                                    *VIA ELECTRONIC MAIL*
Kevin M. Flowers, Esquire
Thomas R. Burns, Esquire
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606
*Attorneys for Plaintiff Onyx Therapeutics*


                                        */s/  Benjamin J. Schladweiler*
                                        Benjamin J. Schladweiler (#4601)